UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SHOLAM WEISS,

        Petitioner,

-vs-                                   Case No.  5:02-cv-204-Oc-10GRJ

STAN YATES, WARDEN
FCC COLEMAN,

        Respondent.

_____/

## MEMORANDUM OPINION

This proceeding was commenced under 28 U.S.C. § 2241 by a convicted federal inmate (Weiss) seeking a writ of habeas corpus commanding that he be released from custody.[1]

The basis of the claim is an alleged treaty violation by the United States of its extradition Treaty with the Republic of Austria.[2]  The petition alleges as its major premise that during extradition proceedings in Austria resulting in Weiss' return to this country, the United States deliberately misled Austrian authorities about certain principles of American law that would apply to Weiss' case should he be extradited.  From that premise it is

_____

[1]Weiss was indicted and tried in the Orlando Division.  He fled while the jury was deliberating, and was then convicted and sentenced in absentia.  He was later extradited from Austria and remains in custody serving his sentence.

[2]Extradition Treaty Between the Government of the Republic of Austria and the Government of the United States of America, Jan. 8, 1998, T.I.A.S. 12916 (ratified by Congress and entered into force Jan. I, 2000)(hereafter the Treaty.)

argued that such deceptions breached the United States' obligation of good faith under the Treaty so that the resulting extradition was and is invalid; and, because the extradition was and is invalid, Weiss concludes that the United States presently has no jurisdiction over his person. The requested relief is a writ commanding not merely that Weiss be released, but that he be returned to Austria and released there.[3]

Notably, the petition does not allege any direct violation of the "rule of specialty," but argues that "this situation is analogous" to such a case. (Doc. 1, page 19.)[4] And this is odd in the extreme because the United States has conceded throughout this proceeding that another aspect of the case does violate the rule of specialty and should be corrected. Specifically, in accord with applicable provisions of the Treaty, Austria withheld extradition as to Count Ninety Three of the indictment (alleging an obstruction of justice offense) because there is no corresponding crime — no "dual criminality" — under Austrian law. Any punishment of Weiss based upon his conviction of the offense charged in Count Ninety Three would therefore violate the rule of specialty and, as stated, the United States has consistently conceded this point.

The dispute thus presents novel and difficult issues of law, especially with regard to remedy, and it has already been pending far too long. However, a recent development

---

[3]The Petition is less than precise in describing the relief requested. In argument, however, counsel for Weiss has specified that release in Austria is the remedy being sought.

[4]The "rule of specialty" prohibits a requesting state from prosecuting or punishing an extradited person for any offense as to which extradition is withheld by the requested state. United States v. Rauscher, 119 U. S. 407, 7 S. Ct. 234 (1886); United States v. Puentes, 50 F. 3d 1567 (11th Cir. 1995); Gallo-Chamorro v. United States, 233 F. 3d 1298 (11th Cir. 2000).

now facilitates a summary disposition, and the Court intends to take advantage of that opportunity.

### A.    Present Status and Disposition

The case is pending on remand from the Court of Appeals (See Docs. 60 and 104) to consider Weiss' Federal Rule of Civil Procedure 60(b) motion (Doc. 57) to alter or amend a judgment previously entered (Doc. 52) denying the petition with prejudice.

The Court has decided that a certificate will now be issued to the Court of Appeals suggesting a further remand to permit this Court to grant the Rule 60(b) motion (Doc. 57) and vacate the previous order and judgment (Docs. 51 and 52).  The certificate will further inform the Court of Appeals, by reference to the reasons stated in this opinion, that upon vacation of that judgment it is the intention of the Court to afford to Weiss a limited opportunity to amend his petition under §2241 by adding an alternative prayer for relief.[5] If the petition is so amended, it would then be the intention of the Court to enter an order

---

[5]The alternative prayer for relief, if asserted, may seek the issuance of a writ commanding the Clerk of the Court to vacate the judgment entered February 22, 2000, in United States v. Weiss, Case No. 6:98-cr-99-PCF-KRS and to then reenter the judgment in identical form in every respect except that any reference to Count Ninety Three of the Indictment, and any reference to or accumulation of any criminal sanction relating to Count Ninety Three should be omitted.  For the reasons explained later in this opinion, such a result would comply with the rule of specialty created by Austria's refusal to extradite Weiss as to Count Ninety Three, and it would arguably afford Weiss his former right of appeal from the conviction and sentence as a whole thereby rectifying the breach of the Treaty alleged in the petition (a breach that is now asserted by Austria itself in an anticipatory manner if relief is not granted in this proceeding.  See discussion, infra.) Whether reentry of the judgment would in fact create a new right of appeal in the criminal case, given the Court of Appeals' previous refusal to reinstate Weiss' appeal in facilitation of the extradition (see discussion, infra)  is, of course, for the Court of Appeals to determine.

to show cause directing the parties to respond and demonstrate why any further evidentiary proceedings are required, that is to say, why the petition should not be summarily granted on the existing record and a writ of habeas corpus issued to effect such alternative relief.[6] If Weiss elects not to amend his petition, it would be the intention of the Court to reenter the judgment of dismissal with prejudice on the basis that the relief requested in the existing petition under §2241 is excessive and inappropriate as a matter of law.

## B.    Background

Weiss and others were indicted in the Orlando Division of this Court in 1998. (Case No. 6:98-cr-99-PCF-KRS).[7]  He was charged with a spate of RICO, money laundering and other offenses arising out of the failure of National Heritage Life Insurance Co.  One of the charges — Count Ninety Three — alleged an obstruction of justice offense in violation of 18 U.S.C. §1503 by presenting false documents and giving false testimony before a grand

---

[6]The United States appears to be satisfied with the completeness of the record, having moved (Doc. 137) to terminate discovery (which will be granted by separate order); and, presumably, though disappointed that discovery has ended, Weiss may be equally content with the existing record given the Court's decision that it already justifies all of the relief to which he is entitled.  Besides, the statute expressly contemplates that habeas corpus proceedings under §2241 may be conducted in a proper case outside the bounds of the Federal Rules of Civil Procedure. Title 28 U.S.C. §2243 states: "The court shall summarily hear and determine the facts and dispose of the matter as law and justice require."  See also Harris v. Nelson, 394 U.S. 286, 89 S. Ct. 1082 (1968); Walker v. Johnston, 312 U. S. 275, 61 S. Ct. 574 (1941), and Federal Rule of Civil Procedure 81(a)(4).

[7]It is entirely coincidental that the present petition under 28 U.S.C. §2241 was filed in the same district in which  the underlying criminal prosecution was brought.  Venue in this proceeding under §2241 lies in this Court, not because Weiss was prosecuted and convicted here, but because he happened to be confined in the Coleman Federal Correctional Complex located within this district, Ocala Division, at the time the petition was filed.

jury.  Trial began before Judge Fawsett in Orlando on February 1, 1999, and continued for eight months.  Weiss was at liberty on bail.  He attended the trial until the case was submitted to the jury.  Weiss then absconded and failed to appear.[8]  The  jury proceeded with its deliberations and returned its verdict on November 1, 1999.  The absent Weiss was found guilty of multiple offenses as charged in seventy eight counts of the indictment including Count Ninety Three.  The Court adjudicated Weiss to be guilty in accordance with the verdict and scheduled a sentencing hearing.

At the sentencing held on February 15, 2000, conducted in absentia with regard to the fugitive Weiss, Judge Fawsett imposed a term of commitment consisting of both concurrent and consecutive components, count by count, aggregating 845 years.[9]  As to Count Ninety Three, the Court imposed a statutory maximum term of ten years imprisonment consecutive to all other counts.

Judgment was entered on February 22, 2000.  Weiss' counsel filed a notice of appeal the following day.  The Government promptly moved to dismiss the appeal on the basis of the "fugitive disentitlement" doctrine,[10] and the Court of Appeals granted the motion.  Weiss' appeal was dismissed on April 12, 2000.

---

[8]A warrant for his arrest was issued in December, 1999.

[9]The Court also levied a fine, ordered a forfeiture  and restitution, imposed the mandatory special assessments, and provided for a period of supervised release.

[10]Molinaro  v. New Jersey, 396 U. S. 365, 90 S. Ct. 498 (1970) (fugitive status "disentitles the defendant to call upon the resources of the court for determination of his claims.").  See also, Ortega-Rodriguez v. United States, 507 U. S. 234, 113 S. Ct. 1199 (1993); Lynn v. United States, 365 F. 3d 1225 (11th Cir. 2004).

Six months later, in October, 2000 —  almost a year after his elopement at the end of trial — Weiss, a citizen of the United States, was found in Austria.  He was provisionally arrested by Austrian authorities at the request of the American Embassy acting on behalf of the Department of Justice.  Afterward, on December 18, 2000, the United States formally requested extradition under the Treaty.

Over the next eighteen months, from mid December, 2000, until June, 2002, ongoing Austrian judicial proceedings were accompanied by numerous negotiations and exchanges of information between responsible American and Austrian officials.  In the midst of that period, and in an obvious effort to meet the concerns being expressed by Austria about the availability of appellate review of Weiss' conviction and sentence, the United States filed in the Eleventh Circuit Court of Appeals on June 22, 2001, a motion seeking reinstatement of Weiss' appeal effective upon his extradition.  The Court of Appeals summarily denied the motion without explanation on June 29, 2001.

 Weiss was ultimately extradited and returned to this country in early June, 2002, although judicial proceedings continued in Europe well into 2003.[11]  Immediately following his arrival in this country, the United States filed in the criminal case in this Court (on June 21, 2002, Orlando Division) a motion for resentencing of Weiss as to Count Ninety Three of the indictment.  The motion was denied by Judge Fawsett on June 25, 2002.  The Government then filed a renewed motion on July 12, 2002, seeking the same relief.  That

---

[11]Neither party is presently suggesting that the results of any of those proceedings has any binding or controlling effect in this action.

motion was also denied.  The Government appealed, but later sought a voluntary dismissal which was granted by the Court of Appeals on January 8, 2003.

In the meantime, on July 17, 2002, as an inmate at the Coleman Federal Correctional Complex within this district, Weiss filed this proceeding in the Ocala Division of the Court under 28 U.S.C. §2241.

The petition alleges that the United States deliberately misrepresented American law to the Austrian authorities in derogation of its obligations under the Treaty; that the resulting extradition of Weiss, therefore, was a violation of the Treaty which now deprives the courts of the United States of jurisdiction of his person to enforce his  sentence; that he has standing to enforce the Treaty; and that, as a remedy, the writ should issue commanding his release from custody.

### C.    History of This Proceeding

Now six years old — presenting issues of fact and law that are  both novel and complex  — the case has obviously had a protracted and somewhat convoluted history.[12]

The United States initially responded to the petition by filing a motion to dismiss for failure to state a claim upon which relief might be granted, arguing that Weiss lacked standing to assert any violation of the Treaty.  The motion also sought summary denial of

---

[12]Among other things, there have been several substitutions of counsel and extensive motion practice accompanied by numerous briefs.  Over the course of the litigation the parties have sought — and the Court has granted — no less than twenty extensions of time for the filing of these papers.

the petition on the ground that Weiss, as a matter of law, would not be entitled to the relief being sought, namely, his outright release.

On January 10, 2005, after thorough briefing, the Court entered an order denying the United States motion to dismiss based upon lack of standing, but granted a summary denial of the petition on the merits finding that Weiss would not be entitled to the relief being sought.  Judgment was entered the following day.

Weiss filed a notice of appeal (Doc. 53) (assigned Case No. 05-11470-GG in the Court of Appeals.).  While the appeal was pending, however, Weiss also filed in this Court a Federal Rule of Civil Procedure 60(b) motion for relief from judgment (Doc. 57), and the Court of Appeals on August 2, 2005, entered an order staying the appeal (Doc. 60) pending resolution of the Rule 60(b) motion here.  Following numerous extensions of time for the filing of briefs, this Court entered an order on June 20, 2007 (Doc.92) denying the Rule 60(b) motion.  Weiss responded by filing a motion for reconsideration (Doc. 93) and, subsequently, a notice of appeal (Doc.96) (assigned Case No. 07-13921-JJ in the Court of Appeals.).

On September 24, 2007, after hearing argument, this Court entered a Certificate to the Court of Appeals (Doc. 100) representing that, if the case was remanded, this Court would grant the pending motion for reconsideration (Doc.93) and conduct further proceedings on Weiss' Rule 60(b) motion seeking relief from the earlier judgment denying the petition.  The Court of Appeals promptly reacted to that Certificate by remanding the case and terminating the appeal designated as Case No. 07-13921-JJ. (Doc.104).  The

Court left in place, however, its earlier stay order of August 2, 2005, in appeal No. 05-11470-GG such that, in the event this Court makes a further certificate that it will grant the Rule 60(b) motion, an additional remand will be required for that purpose. (See Doc. 104).

After the Court of Appeals issued its remand, this Court entered an Order (Doc.106) granting Weiss' motion for reconsideration, vacating the order denying his Rule 60(b) motion, and reviving that motion for further litigation including the allowance of discovery proceedings.

In its Certificate to the Court of Appeals (Doc. 100), this Court enumerated the issues of fact and law to be resolved before a ruling can be made on the Rule 60(b) motion — in effect, before a dispositive ruling can be made on the merits of the case. The Court observed that the dispute between the parties had narrowed to:

> (1) the question of what assurances were made to the Austrian authorities concerning Petitioner's right to appellate review of his conviction and sentence;
>
> (2) whether, assuming the Austrians were assured that appellate review would be available, the Austrian authorities then relied upon the positive assurances given by the United States;
>
> (3) whether the nonfulfillment of those assurances violates the Treaty so as to render the extradition invalid; and
>
> (4) if so, what is the appropriate remedy under §2241?

Since the entry of that Certificate and the allowance of discovery[13] the Parties have filed (together with earlier filings and appendices) a substantial volume of documents.  At present, the matters before the Court — in addition to the Rule 60(b) motion — consist of a motion by Weiss to compel additional production (Doc. 135), and a motion by the United States to terminate discovery (Doc 137).

A hearing was conducted on those motions on August 27, 2008, and a separate Order deciding them has been entered today denying Weiss' motion to compel additional production, and granting the motion of the United States to terminate discovery.  (Doc. 167).  Since the August hearing Weiss has also filed a Motion to Strike and for other relief (Doc. 159), and two additional pleadings entitled Notice of Filing Correspondence (Docs. 160 and 163) in which specified relief is sought.  Those motions have also been denied in the order entered today (Doc. 167).  Given those rulings, the Court deems further hearings or argument with respect to the issues decided in this Memorandum Opinion to be unnecessary.  Under the process contemplated by the Court, the Parties will have a future opportunity to be heard before judgment is entered.

### D.    Recent Development

During the course of the litigation, the United States (the Department of Justice) has suggested to the Court that it was in the process of attempting to have transmitted to

---

[13]By order entered April 30, 2008 (Doc.131) the Respondent was directed to produce, in effect, every non privileged document, note, memorandum, calendar, log, writing or electronic record of any kind in its possession that relates in any way to the Weiss extradition, and to prepare and file a privilege log with respect to any such item not produced.

Austria (by the Department of State) a formal diplomatic message inquiring as to Austria's understandings and intentions relating to the Weiss extradition.  The Court encouraged such efforts but declined to abate the litigation in the meantime.  (See Doc. 131, Order entered April 3, 2008).

The record now reveals that on March 8, 2008, the Department of State, through the United States Embassy in Vienna, conveyed a formal diplomatic inquiry to the Ministry of Foreign Affairs of the Republic of Austria "... regarding the extradition of U. S. national Shalom Weiss, who was extradited from Austria to the United States in 2002." (Doc. 135, Tab 104).  The body of the communication then stated:

> "...Mr. Weiss contends that two letters, dated February 8, 2002, and May 14, 2002 [Doc. 135, Tabs 45 and 59] from the U. S. Department of Justice to the Austrian Ministry of Justice, expressing the opinion that Mr. Weiss would be permitted an appeal, constituted an assurance that the Government of Austria relied upon as binding on the United States.
>
> * * * * * * * * * * * * * * * *
>
> In an effort to resolve this issue, we ask the Government of Austria to respond to the following questions:  (1) Whether your Government believes that the United States provided an assurance that Mr. Weiss would be entitled to appeal his entire sentence if he were extradited; (2) If so, whether your government viewed any such assurance as binding; (3) If so, what constitutes such an assurance of an appeal; and (4) If the Government of Austria believes that the United States is in violation of an obligation concerning this assurance, what action by way of remedy is expected of the United States."[14]

_____

[14]In the first part of this quoted communication, the characterization of the letters by the United States as "expressing the opinion" is self serving if not disingenuous.  The letter of February 8, 2002 recites that the purpose of the communication is to provide "the following (continued...)

On June 6, 2008, the Austrian Federal Ministry for European and Foreign Affairs, utilizing a letter from the Austrian Minister of Justice, replied to the American questions (Doc. 135, Tabs 105 and 106).  The translations of the originals from German to English differ slightly, but the primary communication from the Minister of Justice states:

> "With Regard to questions 1. through 3:
>
> The Republic of Austria  acted upon the assumption of the validity  of the principle of specialty.  In light of the notes of the U. S. Department of Justice delivered to the Federal Ministry of Justice concerning the American legal situation, it had been  the understanding of the Republic of Austria that compliance with the principle of specialty would lead to a resentencing by an American judicial decision, and that the newly assessed sentence would be subject to a full appeal in accordance with the American legal system.
>
> * * * * * * * * * * * * * * *
>
> Regarding question 4.:
>
> To begin with, Austria is not of the opinion that any assurances have thus far been disregarded by the American side, because the present Habeas-Corpus proceedings in the United States intending the adaption of the sentence to comply with the principle of specialty are still pending.

---

[14](...continued)

information" — not "the following opinion" — and there is nothing in the remainder of the letter that qualifies the statements made as opinions rather than facts.  The letter of May 14, 2002, discussed in more detail, _infra_, is mixed.  It first makes the unqualified declaration that if Weiss should be extradited on condition that he not be punished for certain offenses, "... the presiding United States judge would be required to re-sentence Weiss in order to give effect to the condition."  The next sentence then begins:  "In our _opinion_, this would result in Weiss being permitted to file a full appeal on all issues..."  (Emphasis supplied).

However, Austria continues to hold the view that the United States has thus far not fulfilled its obligation to comply with the principle of specialty.  It is up to the American side to make sure that the imposed sentence will be newly assessed by means of an American judicial decision in order to correspond to the partial rejection (i.e. concerning Count Ninety Three) of the extradition. Compliance with the principle of specialty is independent of the will of the concerned person, and would be binding even if the concerned person would declare itself against a re-assessment of the sentence."

### E.  Discussion

#### (1)  Weiss' standing to seek relief

This Court held in denying the Government's motion to dismiss that Weiss has standing to derivatively assert and enforce the rights of Austria under the Treaty, and to seek relief from any violation of the rule of specialty, subject to the paramount right of the requested nation, Austria, to waive the violation if it chooses to do so.  That is the clearly established law of the Circuit as decided in United States v. Puentes, 50 F. 3d 1567 (11th Cir.), cert. denied, 516 U. S. 933, 116 S. Ct. 341 (1995), (citing United States v. Rauscher, 119 U. S. 407, 7 S. Ct. 234 (1886)).  See also, Gallo-Chamorro v. United States, 233 F. 3d 1298 (11th Cir 2000).

It should also be noted that 28 U.S.C. §2241(c)(3) compels the same conclusion. The statute expressly extends the availability of the writ to prisoners who are "... in custody in violation of the Constitution or laws or treaties of the United States...."  (Emphasis supplied).

In this country, consistent with the Supremacy Clause of the Constitution, Article VI, Clause 2, a treaty is more than an international political compact between the United States and the executive department of a sovereign state.  Rather, treaties ratified by Congress — like the one here —  have the status of positive domestic law on the same plane as the Constitution and statutes of the United States (Rauscher, supra, 119 U. S. at 418-419, 7 S. Ct. at 240-241); and, as a part of the domestic law of the United States, Article III, Section 2 of the Constitution expressly extends the enforcement of treaties to the judicial power of the Article III courts.  The Constitution says, in clear and unmistakable terms:

> "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority—"

Furthermore, any question that might be raised about Congressional implementation of Article III, Section 2 is answered completely by §2241(c)(3) extending the writ to prisoners in custody in violation of "treaties of the United States."  What possible meaning could the statute have — in what field of operation would it apply — other than to accomplish Congressional implementation of the judicial power and create standing by providing a procedural mechanism for a prisoner to seek vindication of his derivative rights under a treaty through a writ of habeas corpus issued by an Article III justice or judge?  Any decisional authority not taking into account the pertinent provisions of the Constitution and the language of §2241(c)(3), while stating the conclusion that individual prisoners lack standing in a §2241 proceeding to assert derivative rights under a Congressionally ratified

14

treaty, or that such a treaty is a political document beyond the purview of the courts, are wholly unpersuasive.  <u>Puentes</u> got it right; besides which it is the law of the Circuit and binding on this Court in any event.

> (2)   <u>Violations of the Treaty</u>

> (a) Count Ninety Three

Having decided, then, that Weiss has standing to assert a violation of the Treaty, coupled with the recent declaration by Austria that it continues to expect compliance, the case is all but over except to determine the form and scope of the remedy.  This conclusion follows because the United States has never disputed that extradition was denied by Austria with respect to Count Ninety Three of the indictment, and the rule of specialty now forbids any punishment of Weiss for that offense.[15]  Some remedy is required.  Or is it? Weiss has never sought relief regarding that aspect of the case, and Austria has now declared that it will not consider that the Treaty has been breached by the United States unless and until this very proceeding has concluded without corrective action being taken. This conundrum will remain to be resolved <u>infra</u>.

---

[15]<u>See</u> Doc. 6, page 16.  Until the Austrian government declared in the recent diplomatic exchange its continuing expectation of compliance with the rule of specialty, the United States had defended against any relief being granted to Weiss on the basis that (in addition to his asserted lack of standing) Austria had manifested its intent to waive any breach of the Treaty because it had not complained.  It is now clear that Austria has not intended to waive anything and still expects compliance with the rule of specialty.

(b) The Lack of Appellate Review

Apart from the issues surrounding Count Ninety Three, there are also the questions stated earlier arising out of Weiss' claim (indeed, his only claim) that the United States breached the Treaty by misrepresenting the state of American law governing appellate review of his conviction and sentence. What assurances were made to the Austrian authorities about Weiss' appellate rights? Did the Austrian authorities rely upon any such assurances? Did nonfulfillment of those assurances violate the Treaty? If so, what is the remedy for that violation?

The Austrian response to the diplomatic inquiry does not completely resolve these issues. The response does make it clear, however, that the Austrian side did expect — and still does — that resentencing as to Count Ninety Three removing any criminal sanction for that offense would consequentially result in opening the judgment to a plenary appeal, and that Austria places "rule of specialty" significance on that result.

(I) Did the United States Misrepresent the Law?

Weiss has vigorously argued that the Department of Justice lawyers who represented the United States in its dealings with Austria during the extradition proceedings deliberately misdescribed the state of the law that would govern Weiss' rights of appeal from his conviction and sentence if he should be returned by way of extradition.[16]

---

[16]There was also a claim that the United States had misrepresented Weiss' eligibility for parole, and the Austrian documents do reflect a misconception about the availability of parole in Weiss' case. But there is no evidence in this record of a misrepresentation by United States

(continued...)

Weiss points to several specific documents in support of this claim.  In general terms, each of these documents attempts to persuade the Austrian officials that direct review on appeal is only one of several avenues of relief open to convicted offenders under United States law, and that such additional remedies should suffice to satisfy the requirements of the Treaty despite the dismissal of Weiss' direct appeal.[17]

The first of the communications singled out by Weiss is an email from Ernestine Gilpin, Department of Justice, Office of International Affairs, to Dr. Stefan Benner, the Austrian Minister of Justice, dated March 23, 2001. (Doc. 135, Tab 21).[18]  Ms. Gilpin first describes, accurately, the concept of the fugitive disentitlement doctrine and the dismissal of Weiss' appeal for that reason.  She then made the statement that "[h]ad Weiss returned to the United States prior to entry of the order dismissing the appeal, the court probably would have denied the Government's motion [to dismiss.]"  That is the only questionable

---

[16](...continued)
officials concerning that subject, and the claim seems to have been abandoned in Weiss' more recent briefs and arguments.  Of course, if there were any misrepresentations of any kind made by government lawyers either here or abroad, severe sanctions might be in order.  In this instance, however, the Court will not concern itself with any such ancillary inquiries or proceedings because the Office of Professional Responsibility of the Department of Justice exists for just that purpose and is in a far better position than the Court to pursue any complaint that might be made about professional misconduct by DOJ personnel.

[17]Article 9 of the Treaty, pertaining to "Convictions in Absentia," provides that the requested state may insist on assurances that "... the person was afforded an adequate opportunity to present a defense or that there are adequate remedies or additional proceedings available to the person after surrender."

[18]Ms. Gilpin's email was in response to an earlier request from Dr. Benner for information as to whether Weiss "... had a right of appeal against the conviction...and sentence...that was not exercised by the defendant."  (Doc.135, Tab 20.)

comment in the communication, and the Court cannot say that it was wrong, let alone deliberately deceptive.  First, the statement is qualified by use of the word "probably," thereby clearly conveying that the matter was conjectural.  Second, given the existing decision in <u>Ortega-Rodriguez v. United States</u>, 507 U. S. 234, 113 S. Ct. 1199 (1993), closely on point in relation to the hypothetical posited in Gilpin's email, there was clearly a jurisprudential basis for the conjecture at the time it was made.  Further, as the Austrians themselves have now pointed out, there is still the possibility of an appeal in the criminal case as a result of this proceeding under §2241.  The Court concludes, therefore, that there was nothing in Gilpin's email of March 23, 2001, that was wrong or deceptive.[19]

More troublesome are letters dated February 8, and May 14, 2002 (Doc. 135, Tabs 45 and 59) from Gilpin to Benner saying essentially the same thing, namely:

> "If Weiss is extradited subject to the condition that he not be punished for offenses involving false statements to government officials or in judicial proceedings, the presiding United States judge would be required to re-sentence Weiss in order to give effect to the condition.  In our opinion, this would result in Weiss being permitted to file a full appeal on all issues, including the guilty verdict....and his sentence."(Letter of May 14, 2000.)

---

[19]Weiss also points to a letter from Gilpin to Benner dated June 22, 2001 (Doc 135, Tab 28) transmitting a letter from an Assistant United States Attorney to Gilpin dated June 21, 2001 (Doc. 135, Tab 29) discussing, among other things, a defendant's post conviction remedies under 28 USC §2255 and Federal Rule of Criminal Procedure 33 (motion for a new trial.)  The Court does not discern any deception in these letters. There was no representation that any relief would necessarily be available pursuant to these remedies in Weiss' particular case; and, in fact, the letter from the Assistant United States Attorney concluded with an express disclaimer to that effect.

Obviously, the statement that the presiding judge would be required by the rule of specialty to re-sentence Weiss was wrong.  Judge Fawsett had no jurisdiction to do so in the criminal prosecution, as she so held; the judgment of commitment had become final.[20] However, whether the statement was just wrong, or constituted a deliberate deception, is of no consequence to a decision on the merits of this dispute.[21]   If there was a misrepresentation concerning the nature of the  procedural device that would result in obedience to the rule of specialty, it simply does not matter, in so far as the Treaty obligations are concerned (as distinguished from possible disciplinary inquiries) as long as the rule of specialty is honored in the end.   And that is precisely what the Austrian authorities have pointed out in their response to the diplomatic inquiry about their understanding and intention in the matter.  Indeed, their response that Austria does not consider the Treaty to have been violated at all up to this point demonstrates the present irrelevancy of Judge Fawsett's refusal to re-sentence and properly focuses attention on the rule of specialty; and the rule of specialty involves Count Ninety Three and the remedies that might be available in this proceeding:  (1) elimination of any criminal sanction as to Count Ninety Three; and (2) a resulting plenary appeal from the judgment as a whole.  The

---

[20]See United States v. Bakhtiar, 964 F. Supp. 112  (S. D. N. Y. 1997) (reaching the same conclusion on similar facts).   However, to the extent that Judge Stanton inferred, without discussion, that a writ under §2241 would not be available to the petitioner in a multi-count case until he began service of the sentence in issue, that conclusion would directly conflict with Supreme Court precedent.  Peyton v. Rowe, 391 U. S. 54, 88 S. Ct. 1549 (1968) (a habeas petitioner serving consecutive sentences is "in custody" within the meaning of §2241 and has standing to seek the writ with regard to the consecutive sentence.)

[21]But see note 16, supra.

statements or assurances that were given concerning the procedures that would be followed in enforcing the rule have simply fallen by the wayside.

The Court concludes, therefore, that there was no substantial breach of the Treaty by virtue of the representations made to Austrian officials by representatives of the United States, and there is no lack of jurisdiction on the part of the United States, or this Court, to enforce the judgment except for Count Ninety Three if the rule of specialty is properly invoked concerning that issue.

<u>(3)</u>   <u>The Flaw in the Petition — Failure To Seek The Proper Remedy</u>

The petition is flawed, nevertheless, because it does not seek an available remedy (short of outright release) that would fully recognize and enforce the rule of specialty — that is, a remedy that would eliminate the effect of Count Ninety Three from the judgment and afford Weiss his right of plenary appeal.  Rather, Weiss has avoided pursuit of that relief for the stated reason that the Court has no authority to grant any remedy but release.  (A cynic might question whether the lesser remedy has been shunned only because it doesn't restore his immediate freedom).  In any event, Weiss wants to be returned to Austria and released there.[22]

---

[22]The refinement of being returned to Austria before being released was developed at the hearing conducted on August 27, 2008, after the Court inquired whether, if Weiss should be granted the writ and released so that this proceeding closes in his favor, could he then be subject to immediate arrest with impunity pursuant to the still unsatisfied judgment of commitment?  Weiss responded, through counsel, that he was entitled to be returned to Austria.  But what authority does the Court have to order his return to Austria in the absence of a visa or other suitable document issued by the Austrian government demonstrating its willingness to receive him?  None of the growing volume of papers from Austrian officials contain any request — or grant any
(continued...)

Weiss makes a three pronged argument that the Court has no authority to do anything but order his release.  First, he points to the provision in the Sentencing Reform Act, 18 U.S.C. §3582(c), that the Court "may not modify a term of imprisonment once it has been imposed" except under circumstances not applicable here.  But that constraint is clearly aimed at, and limited to, the sentencing court in the administration of the criminal prosecution; it has nothing to do with the remedies that might be available in a collateral habeas proceeding under 28 U.S.C. §2241,and Weiss cites no authority to the contrary.

The second prong of Weiss' argument is singularly predicated upon the general dictum in Fay v. Noia, 372 U. S. 391, 402, 83 S. Ct. 822, 829 (1963), overruled on other grounds, Coleman v. Thompson, 501 U. S. 722, 111 S. Ct. 2546 (1991) that where the imprisonment of a petitioner "cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."  In fact, however, the holding in the case did not result in the petitioner's "immediate release."  The judgment consisted of a conditional writ directing that the petitioner be granted a new trial, failing which he would then be entitled to his release.  Besides, the developed jurisprudence of the Supreme Court since Fay v. Noia culminating in the recent decision in Boumediene v. Bush, __ U. S. __, 128 S. Ct. 2229 (2008), makes it abundantly clear that a habeas court has a full arsenal of remedies to correct unlawful detentions short of ordering outright

---

[22](...continued)
permission — for Weiss to be returned to that country.

release where a lesser directive will suffice to right the wrong.[23]  Indeed, any relief going

beyond what is necessary to remediate the violation is unavailable as a matter of law and

would constitute error if awarded.  See United States v. Morrison, 449 U. S. 361, 364, 101

S. Ct. 665, 668 (1981) ("remedies should be tailored to the injury suffered from the

constitutional violation and should not unnecessarily infringe on competing interests.")

Ironically, Weiss' third and final argument that the only available remedy is to release

him, is predicated upon the Eleventh Circuit's decision in Wofford v. Scott, 177 F. 3d 1236

(1999), a seminal opinion normally relied upon by custodians in §2241 proceedings to

defeat the petitioner's application for the writ.  Wofford held that the so called "savings

clauses" in 28 U.S.C. §2255 do not authorize the use of §2241 as a means of

circumventing the restrictions on successive habeas petitions unless the petitioner

demonstrates reliance upon a retroactive Supreme Court decision establishing that the

petitioner was convicted of a nonexistent offense, and Circuit law foreclosed assertion of

the claim at the time his motion under  §2255 was filed, or should have been filed.  Though

not entirely clear, Weiss seems to argue by implication that his present claims could or

_____

[23]In Boumediene the Court said (128 S. Ct. at 2271):

> "We do hold that when the judicial power to issue habeas corpus
> properly is invoked the judicial officer must have adequate authority
> to make a determination in light of the relevant law and facts and to
> formulate and issue appropriate orders for relief, including, if
> necessary, an order directing the prisoner's release." (Emphasis
> supplied).

See also, Peyton v. Rowe, 391 U. S. 54, 88 S. Ct. 1549 (1968), and Jones v. Cunningham,
371 U. S. 236, 83 S. Ct. 373 (1963).

should have been made under §2255; that he cannot demonstrate that he meets the requirements of Wofford; and that, as a consequence, there is no available habeas remedy.  Thus, he seemingly concludes, the only way to enforce the rule of specialty is to just release him.  There are at least three fatal imperfections in this excessively strained contention.  First, it was the Petitioner, Weiss, who invoked the Court's jurisdiction under §2241, and if he has no available remedy under the statute then he has no remedy and the action must simply be dismissed.  It certainly does not follow that he is entitled to be released if the Court lacks jurisdiction to do anything under §2241.  Secondly, the implicit argument that his present claims could and should have been made under §2255 is self defeating.  If that is so, and he cannot make the requisite showing under Wofford, then his claims are procedurally barred and that's the end of his case.  And third, if the Austrians are correct that there will be no violation of the rule of specialty unless and until this proceeding itself is terminated without granting relief that enforces its view of the matter, then any claim under §2255 is not yet ripe or mature and Wofford has no application.

The Court concludes that a writ commanding Weiss' immediate release would go well beyond the remedial action necessary to correct the wrong  — the violation of the Treaty  — and it is unavailable as a matter of law.  See United States v. Morrison, supra.

(4)    The Proper Course of Action

(a) The procedural posture of the case

Although the petition cannot be granted in its present iteration, the evidence generated through the discovery process since the earlier entry of the judgment— and

especially the recent response of the Austrian government to the diplomatic inquiry —

demands that Weiss be given an opportunity to amend his petition if he chooses to do so.[24]

The case is presently before the Court on limited remand from the Court of Appeals to

decide Weiss' motion for relief under Federal Rule of Civil Procedure 60(b) from the earlier

judgment of dismissal.  For the reasons already stated in this opinion, and those that follow,

the Court is prepared to grant that motion under Rule 60(b)(2) and (6) on the basis of the

newly discovered evidence of the representations made to Austria relative to the

development and imposition of the rule of specialty concerning Count Ninety Three, and

especially the response of the Austrian government announcing that government's

expectations concerning the rule of specialty.

     A certificate will issue from this Court to the Court of Appeals suggesting an

additional order of remand to permit this Court to grant the Rule 60(b) motion.

                         (b) Future proceedings upon remand

     For the benefit of the Court of Appeals and the Parties, given the unique nature of

this case both procedurally and substantively, in the event that the Court of Appeals issues

an additional order of remand, it is the intention of the Court to grant the Rule 60(b) motion,

to vacate the judgment, and to extend leave of court to Weiss to amend his petition by

---

[24]See Fed. R. Civ. P. 15(a) (providing that "leave [to amend] shall be freely given when justice so requires"); Mayle v. Felix, 545 U. S. 644, 665-66, 125 S. Ct. 2562, 2575-76 (2005) (recognizing that habeas petitioners may be granted leave to amend their petitions "when justice so requires."); Gillette v. Tansy, 17 F. 3d 308, 312 (10th Cir. 1994) (same). See also In re Hill, 113 F.3d 181, 184 (11th Cir. 1997) (noting that a habeas petitioner could have moved to amend his petition pursuant to Fed. R. Civ. P. 15 at any time prior to the denial of the petition).

adding an alternative prayer for relief seeking a writ commanding the Clerk of this Court to vacate the judgment entered on February 22, 2000 in <u>United States v. Weiss</u>, Case No. 6:98-cr-99-PCF-KRS (Doc. 1372), and to then reenter a judgment in identical form in every respect except that any reference to Count Ninety Three of the Indictment, and any reference to or accumulation of any criminal sanction related to Count Ninety Three, shall be omitted.  If such an amended petition is filed, the Court will then issue an order to show cause directing the Parties to demonstrate why the case should not be disposed of on the existing record by summarily granting that alternative relief but otherwise denying the petition.  If such an amendment is not timely filed, the Court will then instruct the Clerk to enter a fresh judgment in this action denying the petition with prejudice.

The manner in which the Court intends to proceed — reentry of the judgment — will fully enforce the rule of specialty with regard to Count Ninety Three and, hopefully, will also cure any violation of the Treaty or the terms of the extradition with respect to Weiss' ability to appeal his conviction and sentence.  This technique has been used before, and has been expressly approved by the Eleventh Circuit in analogous cases to preserve a right of appeal that was unlawfully deprived.  <u>See</u> <u>United States v. Phillips</u>, 225 F. 3d 1198 (11th Cir. 2000) (establishing procedure for vacating judgment and reimposing sentence in a 28 U.S.C. § 2255 proceeding to provide defendant with right to an out-of-time appeal).  <u>See also</u> <u>McIver v. United States</u>, 307 F. 3d 1327, 1332 (11th Cir. 2002) (applying the same procedure in § 2255 proceedings and holding that "an order granting a § 2255 petition, and reimposing sentence, resets to zero the counter of collateral attacks pursued.") (internal

citation omitted).  Given the procedural and substantive posture of this case, it seems most appropriate to utilize this technique here as well.

## **CONCLUSION**

By separate order the Court will certify to the Court of Appeals that if an additional remand of this case is made, this Court will Grant the pending motion (Doc. 57) to set aside the judgment under Federal Rule of Civil Procedure 60(b)(2) and (6), and thereafter proceed in accordance with this Memorandum Opinion.  The certificate will also contain a suggestion that such remand would be appropriate upon timely application by the parties.

The Clerk is directed to remove this case from the trial calendar set for March 2, 2009, and to cancel the pretrial conference scheduled for February 18, 2009.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 15th day of December, 2008.

UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record